IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Robin Major-Oliphant,<br><br>Plaintiff,<br><br>v.<br><br>Spirax Sarco Inc.,<br><br>Defendants. | C/A No.: 3:22-cv-04071-MGL-SVH<br><br>**COMPLAINT**<br>(Jury Trial Requested) |

Plaintiff Robin Major-Oliphant (hereinafter referred to as "Plaintiff"), by and through her undersigned attorneys, brings this action for against Defendant Spirax Sarco Inc. (hereinafter referred to as "Defendant") based on the allegations set forth below.

## PARTIES

1. Plaintiff Robin Major-Oliphant is a citizen of the State of South Carolina residing in Kershaw County.

2. Defendant Spirax Sarco Inc. is a corporation having agents, employees, offices, or properties in Richland County, South Carolina. At all times relevant to this Complaint, Defendant was acting by and through its agents, servants, employees and/or officers. Defendant is incorporated under the laws of the State of South Carolina with its principal place of business in Columbia, South Carolina.

## JURISDICTION AND VENUE

3  The Court has jurisdiction over this action pursuant to 42 U.S.C. Section 12101, this being a proceeding to enforce rights and remedies secured under the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. and other Federal statutes. This Court also has pendant and supplementary jurisdiction over so much of this action as is based on State law.

1

4. Venue is proper in the Columbia Division, because the Causes of Action arose therein, the acts and practices complained of occurred there, and it is where Defendant does business and may be found.

## ADMINISTRATIVE CHARGE

5. The Plaintiff has exhausted all administrative remedies and conditions precedent, including timeliness, deferral and all other jurisdictional requirements necessary for the maintenance of the foregoing action, all of which are described below.

    a. Plaintiff filed a complaint with the Equal Opportunity Commission ("EEOC") ON DATE.

    b. On August 18, 2022, Plaintiff was mailed a Notice of Right to Sue from the EEOC.

6. Plaintiff has timely filed the foregoing action within ninety (90) days of the date on which she received the agency final decision.

## FACTS

7. On or around March 22, 2021, Plaintiff began working for Defendant as a Supply Chain Engineer.

8. At all times, Plaintiff performed her job to the best of her ability.

9. Upon information and belief, shortly after her hiring, Plaintiff began working as a hybrid employee and was permitted by Clarence Wong to work from home three days per week and in the office two days a week.

10. Upon information and belief, around April 2021, Plaintiff was assigned additional duties and responsibilities when Defendant lost employees. Despite the changes to the conditions of her employment, Plaintiff continued to be a dedicated, hard-working, and exemplary employee.

11. Upon information and belief, Plaintiff asserts that she was given additional duties that would require two to three employees to fulfill.

12. On or around August 2021, Plaintiff notified her manager, Candice Harris, that she had been experiencing stress due to the ongoing increased responsibilities Plaintiff received; however, Defendant did not make adjustments and continued to overwork Plaintiff.

13. Upon information and belief, Plaintiff was hospitalized for heart-related health issues in September 2021.

14. During Plaintiff's recovery, Defendant's agent and Plaintiff's manager Ms. Harris would call and text Plaintiff every day. Plaintiff asserts that Ms. Harris' incessant contact was a means to inquire, daily, as to Plaintiff's ability to return to work.

15. Upon information and belief, Plaintiff was released from the hospital on or around October 4, 2021 and returned to work on or around October 12, 2021.

16. However, on October 12, 2021, the same day as her return to work, Plaintiff was readmitted to the hospital and diagnosed with heart failure.

17. Immediately following Plaintiff's hospital stay, Defendant began a practice of discriminating against Plaintiff because of her illness, heart failure, which would qualify as a disability that caused Plaintiff's major life activities, to include work, to change and require accommodations within the purview of Plaintiff's job responsibilities.

18. Upon information and belief, while Plaintiff was away from work due to her heart failure, Ms. Harris contacted Plaintiff about her time away, informing Plaintiff that she would not have to go on short-term disability because she was already a hybrid employee.

19. Upon information and belief, Plaintiff was released from the hospital on or around October 15, 2021 and returned to work on or around October 18,2022; however, Plaintiff was

approved to continue to work from home by her primary care physician as an accommodation in lieu of going on short term disability. This accommodation was to continue until Plaintiff's release from her cardiology doctor.

20. Immediately upon her return, Plaintiff began facing disparate treatment due to her disability and retaliation in response to her request for accommodation.

21. However, upon information and belief, Plaintiff' was not given proper accommodations and was, in fact, given additional work duties because of her disability and learned that Defendant and its agents allowed some tasks to continue without support while Plaintiff was away, further burdening Plaintiff's job upon her return.

22. Upon information and belief, because of her disability, Plaintiff was subject to oral complaints about her workload from Ms. Harris, who would not document her criticisms of Plaintiff's work, made a practice of giving Plaintiff tasks and demanding that the task be completed in a different way only after Plaintiff completed the task.

23. Upon information and belief, Plaintiff was subject to ambiguous tasks and responsibilities designed to burden Plaintiff, impede her ability to complete duties, or falsely portray Plaintiff as incapable of completing her work, both her normal duties and the added duties, due to her disability.

24. On or around October 28, 2022, as a result of Defendant's added work responsibilities meted to Plaintiff, Plaintiff emailed Ms. Harris requesting clarification regarding Defendant's expectations for the conditions of Plaintiff's work-from-home accommodations to which Ms. Harris or none of Defendant's agents replied.

25. Upon information and belief, approximately two weeks after Plaintiff's unanswered email, Plaintiff was contacted by Defendant's Human Resources Vice President, Felix Bentcourt,

who requested that Plaintiff come to the office to discuss "situations." When Plaintiff asked for clarification, she was not given clarification and was told not to worry.

26. Upon information and belief, due to the discriminatory acts and behaviors of Defendant's agents due to her disability, Plaintiff contacted SHAC to inquire about her rights and ability to file a claim with that agency.

27. Upon information and belied, based on her disability, Plaintiff reasonably feared that Defendant would terminate her due to her disability.

28. On or around November 16, 2021, Plaintiff met with Mr. Bentcourt and Ms. Harris and was told, contrary to Plaintiff's reasonable accommodations and ability to work from home, that Plaintiff had to either return to work completely in person or take short term disability leave.

29. As a result of the discriminatory practices of Defendants and its agents, Plaintiff applied to receive short-term disability on or around December 10, 2021.

30. On or around January 5, 2022, Plaintiff was approved for short-term disability through approximately March 20, 2022. However, due to Defendant's discriminatory actions that forced Plaintiff to utilize the short-term disability, Plaintiff was not paid until January 20, 2022.

31. Upon information and belief, while on short-term disability, Plaintiff discovers that she was experiencing complications from a brain condition that was disrupting her nervous system and needed brain surgery, in addition to the heart failure.

32. While on short-term disability and awaiting her surgery date, on or around March 16, 2022, Defendant contacted Plaintiff and inquired about Plaintiff's health.

33. During the March 16, 2022 phone call, and because of her disability, Defendant terminated Plaintiff and ended all of her benefits to include short-term disability immediately.

## FIRST CAUSE OF ACTION
*Violation of the Americans with Disabilities Act*

34. The Americans with Disabilities Act, 42 U.S.C. § 12101, et seq., ("ADA") prohibits employers from discriminating against qualified individuals because of a disability "in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112.

35. Because heart failure substantially limits at least one of Plaintiff's major life activities, Plaintiff is an individual with a disability under the ADA.

36. Plaintiff was fully qualified to maintain her position as a Supply Chain Engineer and could perform all the essential functions of the position.

37. Plaintiff previously worked in a hybrid work schedule, performed her job functions on a work-from-home basis, and maintained her work responsibilities before Defendant terminated and disqualified her because of her heart disease.

38. Defendant is a covered employer to which the ADA applies.

39. Defendant terminated and disqualified Plaintiff from employment solely because Plaintiff has heart disease.

40. Defendant made no individualized assessment to determine whether Plaintiff could perform the essential functions of the job nor did Defendant support whether a reasonable accommodation would enable her to maintain her employment with Defendant, as is required under the ADA.

41. As a result of Defendant's actions, Plaintiff has suffered and will continue to suffer both economic and non-economic harm.

## SECOND CAUSE OF ACTION
*Breach of Contract*

1. Plaintiff reiterates each and every allegation in the previous paragraphs as if set forth verbatim herein.

2. Plaintiff and Defendant entered into a binding and valid contract whereby Defendant offered Plaintiff employment. Plaintiff accepted the offer of employment and agreed to fulfill the duties of her position in exchange for valuable consideration, her salary, as well as Defendant's guarantees that she would be protected from discrimination and other illegal acts.

3. Defendant maintains an employment handbook and its own policies and procedures, including policies regarding anti-discrimination, anti-harassment, and retaliation.

4. At all times during the course of her employment, Plaintiff relied on the promises contained in Defendant's handbook, policies and procedures, and governing documents.

5. Defendant breached its employment contract with Plaintiff and its own policies and procedures by failing to protect Plaintiff from the actions of her Caucasian supervisors, to include retaliation on the basis of Plaintiff's protected complaints.

## THIRD CAUSE OF ACTION
*Breach of Contract with Fraudulent Intent*

6. Plaintiff reiterates each and every allegation contained in the preceding paragraphs as if set forth verbatim herein.

7. Defendant, by and through its agents, has failed to fulfill its obligation under its own written policies, including the above-referenced anti-discrimination, anti-harassment, and other policies of Defendant, which together with their promissory and mandatory terms, form a contract with Plaintiff beyond the at-will employment relationship.

8. Defendant, by and through its agents, has breached the terms thereof by reason of an intentional design on its part to defraud Plaintiff.

9. In furtherance of such intentional design, Defendant, through its agents, intentionally and maliciously placed Plaintiff in a position of being subjected to extreme disability harassment and disparate treatment and conducted a pretextual investigation of Plaintiff in violation of Defendant's policies, under the guise of complying with said policies and protecting Plaintiff from discrimination and harassment.

10. Defendant ensured Plaintiff that she would not be subjected to the disparate treatment, harassment, and other policy violations based on and/or because of her disability, which Defendant continuously meted out to Plaintiff, and that her protected complaints under Defendant's policies would be fully and fairly investigated.

11. It became readily apparent to Plaintiff that Defendant's false reassurances were fraudulent as Defendant's continual violations of their own policies demonstrated.

12. Defendant's' conduct, by and through its agents, was done in bad faith and breached the implied covenant of good faith and fair dealings that is implied in the employment contract.

13. As a result of Defendant's disability discrimination and exposure of Plaintiff to Defendant's fraudulent breaches of contract, Plaintiff has suffered damages in the form of actual, compensatory, consequential, physical, mental, emotional, and other damages. Plaintiff also believes that a reasonable amount of punitive damages should be levied against Defendant on account of their unlawful treatment of Plaintiff and fraudulent contractual breaches

## **JURY TRIAL REQUESTED**

59.     Plaintiff requests a jury trial.

## **PRAYER FOR RELIEF**

60. WHEREFORE, Plaintiff prays that this Honorable Court declares that Defendant's actions complained of herein violated the rights guaranteed to Plaintiff and issue its judgment:

   a. Declaring the actions complained of herein illegal.

   b. Issuing an injunction enjoining the Defendant, its agents, employees, successors, attorneys and those acting in concert or participation with the Defendant, and at their direction from engaging in the unlawful practices set forth herein and any other employment practices shown to be in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq., breach of contract and the common laws of the State of South Carolina.

   c. Awarding Plaintiff compensatory and punitive damages for each cause of action contained herein as appropriate, which the jury should find appropriate as a result of the Defendant's unlawful discriminatory actions taken as the result of Plaintiff's disability and other pled causes of action; including mental anguish, pain and suffering, earnings with cost-of-living adjustments, prejudgment interest, fringe benefits, and retirement benefits;

   d. Awarding Plaintiff his costs and expenses in this action, including reasonable attorney fees, and other litigation expenses; and

   e. Granting such other and further relief as may be just and necessary to afford complete relief to the Plaintiff as this Court may deem just and proper.

*SIGNATURE SHEET ATTACHED*

Respectfully submitted,

s/Donald Gist_____
Donald Gist, Esq. Fed. ID# 7178
Erica McCrea, Esq. Fed. ID# 13493
**GIST LAW FIRM, P.A.**
4400 North Main Street (29203)
Post Office Box 30007
Columbia, South Carolina 29230
Tel. (803) 771-8007
Fax (803) 771-0063
Email: dtommygist@yahoo.com
         ericamccrea.gistlawfirm@gmail.com

**Attorneys for Plaintiff**